1  **WO**

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                        FOR THE DISTRICT OF ARIZONA

6

7   Amal H. Tohmeh,                    )    No. CV 05-1506-PHX-MS
                                       )
8            Plaintiff,                )    **ORDER**
                                       )
9   vs.                                )
                                       )
10                                     )
    JoAnne  Barnhart,  Commissioner of )
11  Social Security,                   )
                                       )
12           Defendant.                )
                                       )
13  _____   )

14       This social security disability benefits case comes before the Court on

15  Plaintiff's Motion for Summary Judgment[1] [Doc. 15] and Defendant's Motion for

16  Remand [Doc. 21].  The Court now remands this matter for an award of benefits.

17  **I.    PROCEDURAL BACKGROUND**

18       Plaintiff applied for Supplemental Security Income benefits in October, 2002,

19  alleging an onset date of July 2, 1998. [Doc. 15 at 1; Doc. 7 at 68, 95].  Her claims

20  were denied initially and on reconsideration.  [Doc. 15 at 2].  Plaintiff obtained a

21  hearing before an Administrative Law Judge ("ALJ"), who issued an unfavorable

22  decision on April 15, 2004.  [Doc. 15 at 2; Doc. 7 at 21-31].  On March 24, 2005, the

23  Appeals Council denied Plaintiff's request for review, and the ALJ's decision became

24

25

26       _____

         [1]      The full title of Plaintiff's motion is Motion for Summary Judgment on
27          Complaint for Judicial Review of Administrative Determination of Claims
            for Supplemental Security Income Benefits Based on Disability.
28          [Doc.15].

1  the final decision of the Social Security Commissioner for purposes of judicial review.

2  [Doc. 15 at 4; Doc. 7 at 5-8].

3      Plaintiff filed a Complaint in this Court on May 20, 2005 [Doc. 1], and a Motion

4  for Summary Judgment on November 30, 2005.  [Doc. 15].  Defendant opposed the

5  motion and filed a Motion for Remand on February 3, 2006.  [Doc. 21].

6  **II.   LEGAL FRAMEWORK**

7      **A.  Standard of Review**

8      Because the Social Security Act confines the scope of judicial review to

9  evidence within the administrative record, the Court will treat Plaintiff's Motion for

10 Summary Judgment as a motion for reversal of the Commissioner's decision.  42

11 U.S.C. § 405(g); Higgins v. Shalala, 876 F. Supp. 1224, 1226 (D. Utah

12 1994)(collecting cases and discussing the appropriate treatment of summary

13 judgment motions requesting review of administrative decisions).  The appropriate

14 standard of review is whether the ALJ's findings of fact are supported by substantial

15 evidence and whether the denial of benefits was free from legal error.  Smolen v.

16 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Flaten v. Sec'y of Health & Human

17 Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial evidence is "relevant

18 evidence as a reasonable mind might accept as adequate to support a conclusion."

19 Smolen, 80 F.3d at 1279 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971));

20 accord Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  To determine

21 whether substantial evidence exists to support an administrative decision, the Court

22 must "review the administrative record as a whole, weighing both the evidence that

23 supports and detracts from the [ALJ]'s conclusion."  Magallanes, 881 F.2d at 750.

24      If the evidence can support either affirming or reversing the ALJ's decision, the

25 Court must uphold the decision.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir.

26 1995).  However, reviewing courts cannot accept post hoc rationalizations for

27 agency action.  See, e.g., NLRB v. Metro. Life Ins. Co., 380 U.S. 438, 444 (1965);

28 Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001).  Thus, the ALJ's decision must

1  be upheld, if at all, on the grounds articulated in the order by the ALJ.  Pinto, 249
2  F.3d at 847.

3  **B. Regulatory Disability Standards**

4  To qualify for disability benefits under the Social Security Act, a claimant must
5  show that: (1) she suffers from a medically determinable physical or mental
6  impairment that can be expected to result in death or that has lasted or can be
7  expected to last for a continuous period of not less than twelve months; and (2) the
8  impairment renders the claimant incapable of performing work previously performed
9  and incapable of performing any other substantial gainful employment that exists in
10  the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A); Tackett v. Apfel, 180
11  F.3d 1094, 1098 (9th Cir. 1999).  The Social Security Regulations set forth a five-step
12  sequential process for evaluating disability claims.  See 20 C.F.R. § 404.1520.  A
13  claimant's claim of disability can be rejected at any stage of the sequential process.
14  Id.; § 404.1520.  The claimant bears the burden of proof at steps one through four
15  of the sequential process. 42 U.S.C. § 423(d)(5); Reddick v. Chater, 157 F.3d 715,
16  721 (9th Cir. 1998).  The burden shifts to the Commissioner at step five.  Reddick,
17  157 F.3d at 721.

18  At step one of the sequential process, the ALJ determines whether the
19  claimant is currently engaged in substantial gainful activity.  Tackett, 180 F.3d at
20  1098; § 404.1520(b).  At step two, the ALJ determines, based on the medical
21  evidence, whether the claimant has a "severe impairment." Id.; § 404.1520(c). If the
22  claimant's impairment is not severe, then the claimant will not be considered
23  disabled.    If the impairment is severe, the ALJ proceeds to step three and
24  determines whether the impairment meets or equals a specific impairment listed in
25  the regulations.  Id.; § 404.1520(d).  When the impairment "meets or equals" one of
26  the specified impairments, disability will be found.  When the impairment does not
27  meet or equal a specified impairment, the ALJ proceeds to step four and determines
28  whether the claimant can still perform "past relevant work." Id.; § 404.1520(e). If the

1   claimant can perform such work, the claim is denied.  However, if the claimant is

2   unable to do past relevant work, the ALJ proceeds to the fifth step and determines,

3   based on the claimant's age, education, work experience and residual functional

4   capacity (RFC), whether the claimant can perform other work that exists in the

5   national economy.  Id.; § 404.1520(f).  If the claimant cannot, she is entitled to a

6   finding of disability.

7   **III.    DISCUSSION**

8           In this case, the ALJ considered whether Plaintiff was disabled based on her

9   allegations that she suffered from: (1) post-traumatic stress disorder; (2) depression;

10  (3) and anxiety.  [Doc. 7 at 113].  The ALJ found Plaintiff not disabled at step five of

11  the sequential evaluation process. [Doc. 7 at 29].  At step one, the ALJ found that

12  Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

13  [Doc. 7 at 25].  At step two, the ALJ found that Plaintiff had post traumatic stress

14  syndrome, an affective disorder, and a history of headaches, impairments that were

15  severe within the meaning of the guidelines. [Id.]  At step three, the ALJ determined

16  that Plaintiff's severe impairments were not severe enough to meet or medically

17  equal one of the impairments specified in the regulations.  [Id. at 25-26].  Because

18  Plaintiff had no work history, the ALJ proceeded to step five of the sequential

19  process.   At step five, the ALJ determined that Plaintiff retained the residual

20  functional capacity to perform "simple, repetitive tasks, with no complex or written

21  instructions" and "can do low stress work, with no high production quotas." [Id. at

22  28].  He further determined that Plaintiff's reported limitations did not prevent her

23  from performing work as a hand packager, laundry laborer, or food assembler, and

24  that she was therefore not disabled.[2] [Id. at 29].

25

26  _____

27          [2]      The ALJ made this determination based on the report of a vocational
                   expert who took into account Plaintiff's age, educational background,
28                 and employment history.

- 4 -

1    Plaintiff now contends that the ALJ erred in several ways. First, Plaintiff
2  contends that the ALJ erred by failing to assign any weight to the opinions of the
3  agency's examining psychologists, whose opinions led to vocational expert
4  testimony that a person so limited would be unable to perform substantial work.
5  [Doc. 15 at 3-8]. Specifically, Plaintiff contends, 20 C.F.R. § 416.927(d)(1) requires
6  that an ALJ give more weight to the opinion of a source who has examined the
7  claimant, than to the opinion of a source who has not. Because there was no
8  contradictory opinion by another physician, Plaintiff submits that the examining
9  physicians' opinions may only be rejected for clear and convincing reasons
10  supported by substantial evidence. Second, Plaintiff argues that the ALJ erred by
11  relying on non-testifying, non-examining state agency physicians' assessments.
12  Plaintiff argues that this was error because the Ninth Circuit has only allowed
13  opinions of non-examining physicians to be introduced in circumstances where they
14  are subject to cross-examination.   [Id. at 8-9]. Third, Plaintiff contends that the ALJ
15  erred by basing a hypothetical question to the vocational expert, and the unfavorable
16  decision, on a person limited to "simple repetitive tasks" with "no high production
17  quotas," instead of determining the function by function residual functional capacity
18  assessment required by Social Security Ruling 96-8p. [Id. at 10-12]. Fourth, Plaintiff
19  contends that the ALJ erred by relying on the Dictionary of Occupational Titles
20  (DOT) to conclude that she could work as a food assembler or a hand packager
21  because the DOT description is inconsistent with the RFC found by the ALJ. [Id. at
22  12-14]. Finally, Plaintiff contends that the ALJ erred by discrediting her testimony
23  without clear and convincing reasons. [Id. at 14-16].

24    Defendant concedes that a remand of this matter is appropriate. Defendant
25  contends, however, that Plaintiff's application for benefits requires further factual
26  development and evaluation of the evidence, which requires further administrative
27  proceedings. [Doc. 22 at 4]. Defendant observes that a new step five determination
28  is necessary and that clarification of the opinions of Drs. Piatka and Salk is

1   necessary to determine their functional assessments of Plaintiff's capacity.  [Id.].  To

2   this end, Defendant proposes that the Court direct the ALJ to obtain the following on

3   remand:

4

5       (1) conduct a new hearing and issue a new decision; (2) re-contact
        consultative examiners Alexander Piatka, Ph.D., and Eliot Salk, Ph.D. to
6       obtain clarification of their opinions and to further consider their opinions and
        state the weight given to them; (3) obtain testimony from a medical expert
7       specializing in mental impairments; (4) obtain another consultative mental
        status examination; and (5) obtain supplemental vocational expert testimony
8       to clarify any apparent conflicts between the vocational expert's testimony and
        information contained in the DOT.

9   [Doc. 22 at 4].

10       Generally, when reversing an administrative determination, "the proper

11   course, except in rare circumstances, is to remand to the agency for additional

12   investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir.

13   2004)(quoting INS v. Ventura, 537 U.S. 12, 16 (2002) (per curiam)).   Remand for

14   further consideration is appropriate where issues are unresolved and enhancement

15   of the record is required.  Id.; Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003);

16   Harman v. Apfel, 211 F.3d 1172,1178-79 (9th Cir. 2000).  However, the Ninth Circuit

17   has recognized that it is both reasonable and desirable to require hearing officers to

18   articulate the grounds for discrediting  testimony in the original decision.  Harman,

19   211 F.3d at 1179.  Thus, improperly rejected evidence should be credited and an

20   award directed when:

21       (1) the ALJ has failed to provide legally sufficient reasons for rejecting
        such evidence, (2) there are no outstanding issues that must be
22       resolved before a determination of disability can be made, and (3) it is
        clear from the record that the ALJ would be required to find the claimant
23       disabled were such evidence credited.

24   Smolen, 80 F.3d at 1292.  See also Benecke, 379 F.3d at 593; Moisa v. Barnhart,

25   367 F.3d 882, 887 (9th Cir. 2004); Harman, 211 F.3d at 1178; Varney v. Sec'y of

26   Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988).

27

28

**A. Whether the ALJ erred in failing to assign any weight to the opinions of the agency's examining psychologists and by rejecting the opinions in favor of that of a non-examining doctor**

A primary issue in this case is the ALJ's rejection of the testimony of Drs. Piatka and Salk in the absence of other contradictory testimony from an examining physician.  The two examining physicians evaluations are summarized as follows:

### 1.  Dr. Alexander Piatka, Ph.D.

Dr. Piatka performed a consultative examination on January 8, 2003.  He noted that there were no medical or psychiatric records available to review.  Dr. Piatka noted that Plaintiff reported problems with sleep disturbance, fatigue, depression, and irritability.  She described her fear of the police and security in Iraq and Lebanon, which stems from the arrest and detention of her husband for five- to six months.   She also "reported difficulty being around people" and "feeling restrained or suffocated" when she left her home. [Doc. 16 at 6, 7 at 174].

Dr. Piatka diagnosed Plaintiff as suffering from post-traumatic stress disorder and anxiety with agoraphobia.  He articulated that it would be

> very difficult to estimate the impact of [Plaintiff's] emotional difficulties on capacity for employment.  She tended to be somewhat vague in describing the intensity and severity of her symptoms via translation.  Based on her self-report the greatest area of difficulty would likely be leaving the home secondary to agoraphobic symptoms.  Medical Source Statement ratings are provided below.  Ability to function independently or demonstrate reliability may be seriously limited or poor due to agoraphobia. Ability to follow work rules is estimated to be satisfactory. Ability to relate to co-workers, the public, and supervisors is estimated to be seriously limited due to being fearful of social situations.  This is difficult to rate given issues of acculturation and language barrier. Ability to deal with work stresses is estimated to be seriously limited secondary to anxiety and PTSD symptoms. Ability to maintain attention to task persistence is estimated to be satisfactory. Ability to use judgment is estimated to be satisfactory.  A thorough mental status evaluation was not possible with [Plaintiff] due to a language barrier.  She incorrectly reported some orientation information though the reasons for this are not clear.  Ability to understand, remember, and carry out simple job instructions appears very good.  Ability to understand, remember, and carry out detailed or complex job instructions is difficult to rate.  She did not come across as confused during the evaluation. She appeared to interact

appropriately with the translator.  Ability to maintain personal appearance appears satisfactory. Ability to behave in an emotionally stable manner appears seriously limited secondary to agoraphobia and PTSD symptoms.  She appears to experience increased distress when leaving the home or encountering reminders of past traumatic experiences. Ability to relate predictably in social situations appears satisfactory to seriously limited.  No difficulties were observed during the interview though she reports difficulty coping with social situations.  It is very difficult to disentangle reported difficulties with anxiety, cultural factors, and language.  Ability to demonstrate reliability may be seriously limited or poor secondary to agoraphobic and PTSD symptoms.

[Doc. # 7 at 177].

### 2.  Dr. Elliot D. Salk, Ph.D.

Dr. Salk performed a consultative examination on April 24, 2003.  He reviewed the evaluation from Dr. Piatka, but no other medical records were available.  Plaintiff reported pain in her head and forgetfulness.  She reported being hit in the head at age 10 or 11 by the Iraqi army.  She expressed her depression to Dr. Salk, and reported that she does not do much in terms of housework, and does not like to leave her home.  Dr. Salk concluded that Plaintiff was uncooperative during the evaluation, in contrast to her participation with Dr. Piatka.  Specifically, Dr. Salk stated, "her facial expression was one of irritability and [Plaintiff] flatly stated that she wanted to leave.  Nevertheless, based on information presented to Dr. Piatka coupled with a limited information that she presented to this examiner, it is this examiner's opinion that PTSD is probably [a] reasonable diagnosis."  [Doc. 7 at 195-197].

### 3.  The Vocational Expert's Testimony

Having considered the evaluations of Drs. Piatka and Salk, the vocational expert ("VE") testified at Plaintiff's hearing before the ALJ.  The VE articulated that based on Plaintiff's limitations, as diagnosed by the examining doctors, it would be unlikely that Plaintiff could sustain work related activities on a regular and continuing basis. [Doc. # 7 at 65].

### 4.  The ALJ Decision

- 8 -

1    The ALJ discussed the reports and opinions of Drs. Piatka and Salk.  The ALJ
2  additionally considered the examination performed by Dr. Sadek on October 24,
3  2002.  Ultimately, the ALJ discredited the testimony of the examining doctors, and
4  accepted the findings found in the psychiatric review technique form (PRTF) dated
5  May 9, 2003, which determined that Plaintiff suffered from "an anxiety-related
6  disorder, with moderate functional limitations in activities of daily living and in
7  difficulties in maintaining social functioning, with mild difficulties in maintaining
8  concentration, persistence or pace." [Doc. # 7 at 27].  As a result, the ALJ found that
9  the medical evidence did not support a finding of any severe physical limitations
10 which lasted any 12 month period of time. [Id. at 28].   Additionally, the ALJ
11 determined that Plaintiff "retains the residual functional capacity to perform simple,
12 repetitive tasks, with no complex or written instructions (not conversant in English)
13 and can do low stress work, with no high production quotas."  [Id.]

14    In reviewing the ALJ's unfavorable decision, it is plain that the opinions of the
15 examining physicians were rejected in favor of a non-examining physician.  [Id.
16 ("With regard to the mental impairments, the undersigned concludes that the findings
17 by the state agency medical consultant in exhibit 8F (the PRTF) are supported by
18 the record and accepted by the undersigned.") The question that remains is whether
19 the ALJ utilized clear and convincing reasons in so doing.

20    The ALJ is responsible for evaluating the opinions of each doctor, resolving
21 conflicts in the medical testimony, and resolving ambiguities.  Morgan v. Social Sec.
22 Admin., 169 F.3d 595, 601 (9th Cir. 1999); Reddick, 157 F.3d at 722; Andrews v.
23 Shalala, 53 F.3d at 1035, 1039 (9th Cir. 1995).  The degree of weight given to a
24 particular physician's opinion depends on a variety of factors.  Among the relevant
25 factors to be considered are the relationship between the physician and patient, the
26 length and extent of treatment, the physician's specialty, and the support for the
27 physician's opinion in the medical record.  20 C.F.R. § 404.1527(d); see also
28 Andrews, 53 F.3d at 1035, 1041(discussing the weight to be given to different types

1   of physicians' opinions).  Greater weight is accorded to the opinion of an examining

2   physician than to the opinion of a non-examining physician.  Andrews, 53 F.3d at

3   1040-41.  The ALJ may reject an uncontroverted opinion of a treating physician only

4   for clear and convincing reasons.   Id. at 1041; Magallanes, 881 F.2d at 751.

5   Similarly, "the Commissioner must provide 'clear and convincing' reasons for

6   rejecting the uncontradicted opinion of an examining physician." Lester v. Chater,

7   81 F.3d 821, 830 (9th Cir. 1996)(as amended)(citing Pitzer v. Sullivan, 908 F.2d 502,

8   506 (9th Cir.1990)).  Further, "like the opinion of a treating doctor, the opinion of an

9   examining doctor, even if contradicted by another doctor, can only be rejected for

10  specific and legitimate reasons that are supported by substantial evidence in the

11  record." Id. at 830-831 (citing Andrews, 53 F.3d at 1043).

12          Here, Defendant acknowledges that no weight was assigned to the examining

13  doctors' opinions, and urges this Court to remand this case to allow further

14  clarification of Drs. Piatka and Salk, and allow the ALJ to further consider the

15  opinions and state the weight given to them.   Plaintiff contends that no clear,

16  convincing, specific, or legitimate reasons were used in rejecting the examining

17  psychologists' opinions.  Plaintiff further posits that, although the ALJ stated in his

18  opinion, that the "evaluations did not make findings which would preclude sustained

19  work," the VE testimony predicated on the psychological evaluations did just that.

20  [Doc. # 15 at 7].

21          The Court agrees with Plaintiff that the ALJ erred in not assigning any weight

22  to the examining doctors' opinions.  Furthermore, the Court agrees that the stated

23  reasons for rejecting their opinions were not clear and convincing, and that the VE

24  testimony predicated on the psychological evaluations did make findings which

25  would preclude sustained work.

26          The ALJ found that Plaintiff's depressive syndrome results in a moderate

27  restriction of activities of daily living, moderate difficulties in maintaining social

28  functioning and mild difficulties in maintaining concentration, persistence or pace.

1   The ALJ further determined that there had been no findings which would preclude
2   sustained work.  [Doc. 7 at 28].  However, the ALJ makes no mention of the VE's
3   testimony that Plaintiff would be unable to perform sustained work. [Doc. 7 at 65].
4   This testimony was wholly based on the examinations and reports of Drs. Piatka and
5   Salk.   In addition, the ALJ credited the findings by the state agency medical
6   consultant, a non-examining physician. [Doc. 7 at 28].  In so doing, the ALJ implicitly
7   rejected the opinions of the examining physicians.  However, the ALJ's proffered
8   reasons for rejecting the examining physicians findings, "[Plaintiff] reported no
9   psychiatric treatment" and "was not taking medication," do not rise to the level of
10  clear and convincing. Lester, 81 F.3d at 830-31. It is certainly possible that Plaintiff
11  has failed to seek further treatment because of her underlying psychological
12  disorders, which hinder her ability from leaving her home. [See Doc. # 7 at 172, 195].

13          Because the ALJ must set out in the record his reasoning and the evidentiary
14  support for his interpretation of the medical evidence.   See Tackett, 180 F.3d at
15  1102, and because that was not done here,  the Court agrees with the parties that
16  the ALJ's opinion was not supported by specific reasons or substantial evidence.

17          **B.   Whether the ALJ was justified in determining that Plaintiff's
18  subjective complaints were not credible**

19          The ALJ also found that Plaintiff was not entirely credible, specifically finding
20  that "[h]er complaints and alleged limitations are out of proportion to the evidence."
21  [Doc. 7 at 28].  It is within the province of the ALJ to make credibility determinations.
22  To  discredit a claimant's testimony, and ALJ must provide specific, cogent reasons
23  supported by substantial evidence. Reddick, 157 F.3d at 722.  The ALJ may not
24  reject a claimant's testimony without specifically identifying the portions of the
25  testimony found not credible and explaining what evidence contradicts or
26  undermines the testimony.  Aukland v. Massanari, 257 F.3d 1033, 1036 n.1 (9th Cir.
27  2001); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001); Reddick, 157 F.3d at
28  722. An ALJ's credibility findings must be sufficiently specific to allow a reviewing

1  court to conclude that the hearing officer rejected the testimony on permissible

2  grounds rather than arbitrarily discrediting it.  Rollins, 261 F.3d at 856.  Where there

3  is no affirmative evidence of malingering, the ALJ's reasons for rejecting the

4  claimant's testimony must be clear and convincing.   Reddick, 157 F.3d at 722;

5  Lester, 81 F.3d at 834.

6       Here, there is no affirmative evidence of malingering, and Defendant makes

7  no argument in support of malingering.  The ALJ offered the following reasons for

8  determining that Plaintiff's testimony was not credible.  The ALJ determined that

9           [Plaintiff's] complaints are not consistent with the treatment she
           receives. [Plaintiff] has received conservative treatment, with
10          no hospitalizations.  She stated that she does laundry and
           cares for her children and cooks for them.   There is no
11          subjective evidence to support significant side-effects from
           medication.   Accordingly, the subjective complaints of the
12          claimant are discounted to the extent they conflict with the
           mental functional capacity assigned to the claimant by the
13          undersigned.

14       Based on the evidence in the record, the Court finds that the ALJ's reasoning

15  is not supported by clear and convincing reasons.   The main reason cited by the

16  ALJ is Plaintiff's ability to perform some daily activities.  However, the fact that a

17  claimant can perform some daily activities does not mean that she is not disabled.

18  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has repeatedly

19  asserted that the mere fact that a plaintiff has carried on certain daily activities, such

20  as grocery shopping, driving a car, or limited walking for exercise, does not in any

21  way detract from her credibility as to her overall disability.  One does not need to be

22  'utterly incapacitated' in order to be disabled." (citations omitted)).

23       Although an ALJ may consider a claimant's failure to seek or adhere to

24  treatment plan in assessing credibility, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

25  1989, he has an obligation to support an adverse credibility finding with substantial

26  evidence and specific findings.  Reddick, 157 F.3d at 722.  In order to find a claimant

27  not-disabled for failure to follow a course of treatment without good reasons, the ALJ

28  must examine the claimant's medical conditions and personal factors to determine

1  whether the impairment is indeed remediable by such treatment and whether the
2  claimant could return to work if treated.  See Byrnes v. Shalala, 60 F.3d 639, 641 (9th
3  Cir. 1995).   See also Regennitter, 166 F.3d at 1299-1300 (cautioning against
4  "chastising one with a mental impairment for poor judgment in seeking
5  rehabilitation")(quoting Nguyen v. Chater, 100 F.3d , 1462, 1465 (9th Cir. 1996). The
6  ALJ's determination in this case falls far short of meeting these standards, especially
7  in light of the fact that Plaintiff did not have a treatment plan in place.

8         Although an ALJ may consider a claimant's abilities to engage in daily
9  activities in determining credibility, Fair, 885 F.2d at 603, the level of activity is only
10  relevant if it is inconsistent with the claimant's claimed limitations.  Reddick,  157
11  F.3d at 722.  See also Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004); Fair,
12  885 F.2d at 603(recognizing that "many home activities are not easily transferable
13  to ... the more grueling environment of the workplace, where it might be impossible
14  to periodically rest or take medication"); Cooper v. Bowen, 815 F.2d 557, 561 (9th
15  Cir. 1987)(noting that a disability claimant need not "vegetate in a dark room" in
16  order to be deemed eligible for benefits).  In this context, it is plain that the ALJ did
17  not provide clear and convincing reasons for discounting Plaintiff's testimony.  As a
18  result, the Court finds error.

19         **C. Plaintiff's Remaining Arguments**

20         Plaintiff additionally argues that the ALJ erred by: (1) conducting a global
21  assessment of her residual functional capacity rather than conducting a function-by-
22  function assessment, and (2) relying on the Dictionary of Occupational Titles (DOT)[3]
23  to conclude that she could work as a hand packager or food assembler.   [Id. at 9-
24  11].  As to the first argument, when the rejected VE testimony is credited, it becomes
25  apparent that the ALJ's failure to conduct a function-by-function assessment was

26

27         [3]      DICTIONARY OF OCCUPATIONAL TITLES (DOT)(United States Dept. of Labor,
28              4th Ed. 1991), *available at* www.oalj.dol.gov/libdot.htm

1   error, as "the individual must be able to perform substantially *all* of the exertional and

2   nonexertional functions required for work at that level.  Therefore, it is necessary to

3   assess the individual's capacity to perform *each* of these functions. . . ."  Social

4   Security Ruling 96-8p, 1996 SSR LEXIS 5, at *8.

5          As to the second argument, Defendant concedes there is a conflict between

6   the testimony of the vocational expert and the DOT regarding the potential jobs the

7   ALJ found Plaintiff could perform.  More specifically, the ALJ relied on the VE's

8   testimony[4] to conclude that Plaintiff could perform jobs as a hand packager or a food

9   assembler.  However, the DOT describes these two jobs as requiring the ability to

10  recognize the meaning of 2,500 words, and yet the ALJ assessed that the Plaintiff

11  was not conversant in English. [DICTIONARY OF OCCUPATIONAL TITLES (DOT)(United

12  States Dept. of Labor, 4th Ed. 1991), *available at* www.oalj.dol.gov/libdot.htm, at Appendix

13  C; Doc. 7 at 28].  The ALJ may not rely on VE testimony that differs from the data

14  articulated in the DOT without resolving the apparent conflict.  Defendant concedes

15  that the conflict was not resolved.  This Court will not allow Defendant a second bite

16  at the apple in connection with the instant claim.  Step five of the sequential

17  evaluation process shifts the burden to Defendant to demonstrate that a claimant

18  can perform relevant work in the national economy.  Tackett, 180 F.3d at 1098; 20

19  C.F.R. § 404.1520(f).  Defendant concedes that the burden has not been met.  As

20  a result, the Court finds additional error.

21         **D. Remand**

22         Having found error, this Court must determine whether to remand for further

23  consideration or for the award of benefits. McCartey v. Massanari, 298 F.3d 1072,

24

25         [4] Admittedly, the VE's testimony draws contradictory conclusions.  First, the
26  VE articulated that Plaintiff could perform work as a food assembler or hand
    packager. Subsequently, under questioning by Plaintiff's counsel, the VE conceded
27  that, when considering the limitations found by the two examining physicians, an
    individual in Plaintiff's situation would be unable to sustain work. [Doc. 7 at 61, 65].

28

1  1076-77 (9th Cir. 2002); Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).

2  As noted above, a remand for an award of benefits is only appropriate if there are

3  no outstanding issues to resolved, and the record clearly indicates that the ALJ

4  would be required to find the claimant disabled were the rejected evidence credited.

5  Smolen, 80 F.3d at 1292.

6        For the foregoing reasons, this matter will be remanded for an award of

7  benefits. All the requirements of Smolen have been met.  First, as explained

8  previously, the ALJ erred in failing to provide legally sufficient reasons for rejecting

9  Plaintiff's testimony and failing to assign any weight to the examining physicians'

10  testimony.  Moreover, there are no outstanding issues that must be resolved on

11  remand. At the hearing before the ALJ, the vocational expert testified that a person

12  with Plaintiff's limitations, as established by the testimony of Plaintiff and Drs. Piatka

13  and Salk, would not be able to sustain work.  Thus, further inquiry into whether

14  Plaintiff would be found disabled if the improperly discredited evidence were credited

15  is not required.  Based on the record before the Court, in the absence of any

16  contradictory opinion testimony by an examining or treating physician, it is clear that

17  Plaintiff would be entitled to a finding of disability.   For these reasons, the Court

18  finds that an award of benefits is warranted.  Benecke, 379 F.3d at 593; Smolen, 80

19  F.3d at 1292.

20        **IT IS THEREFORE ORDERED granting** Plaintiff's Motion for Summary

21  Judgment [Doc. 15];

22        **IT IS FURTHER ORDERED remanding** this matter to the Social Security

23  Administration for an award of benefits;

24        **IT IS FURTHER ORDERED denying** Defendant's Motion for Remand [Doc.

25  21] as moot.

26        DATED this 27th day of March, 2006.

27

28
                        _____
                               Morton Sitver
                        United States Magistrate Judge